UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION,<br><br>                                Plaintiff,<br><br>vs.<br><br>HUNTER WISE COMMODITIES, LLC, HUNTER WISE SERVICES, LLC, HUNTER WISE CREDIT, LLC, HUNTER WISE TRADING, LLC LLOYDS COMMODITIES, LLC, LLOYDS COMMODITIES CREDIT COMPANY, LLC, LLOYDS SERVICES, LLC, C.D. HOPKINS FINANCIAL, LLC, HARD ASSET LENDING GROUP, LLC, BLACKSTONE METALS GROUP, LLC NEWBRIDGE ALLIANCE, INC., UNITED STATES CAPITAL TRUST, INC., HAROLD EDWARD MARTIN, JR., FRED JAGER, JAMES BURBAGE, FRANK GAUDINO, BARIS KESER, CHADEWICK HOPKINS, JOHN KING, AND DAVID A. MOORE,<br><br>                                Defendants. | Case No.:  9:12-CV-81311-DMM<br><br>Middlebrooks/Brannon |

### DEFENDANTS HAROLD EDWARD MARTIN, JR. AND FRED JAGER'S OPPOSITION TO RECOMMENDATIONS IN MONITOR'S INITIAL REPORT

COMES NOW, the individual Defendants Harold Edward Martin, Jr. and Fred Jager (the "Defendants"), of Hunter Wise Commodities, LLC, Hunter Wise Services, LLC, Hunter Wise Credit, LLC and Hunter Wise Trading, LLC (collectively the "HW Entity Defendants"), by and through their undersigned counsel, file this Opposition to Recommendations in Monitor's Initial Report.

### Factual Background

The U.S. Commodity Futures Trading Commission (the "CFTC") filed a thirteen-count complaint on December 5, 2012, naming twelve business entity defendants and eight individual defendants. Among

those named were Hunter Wise Commodities, LLC, Hunter Wise Services, LLC, Hunter Wise Credit, LLC, Hunter Wise Trading, LLC (the "HW Entity Defendants") and the individual principals of Hunter Wise Commodities, LLC, Harold Edward Martin, Jr. and Fred Jager.  On February 22, 2013, following the Hearing on Plaintiff United States Commodity Futures Trading Commission's Motion for a Preliminary Injunction (the "Injunctive Hearing"), the Court issued its Order Temporarily Appointing Special Corporate Monitor in which it granted the preliminary injunction against all named defendants and appointed a Special Monitor and Corporate Manager (the "Appointment Order").  See Order Temporarily Appointing Special Corporate Monitor **[DE 77]** [hereinafter "Appointment Order"].  The Appointment Order required the Monitor to report conclusions and recommendations within thirty (30) days of the Order. Id. ¶ 35 **[DE 77]**.  The undersigned makes this Motion in objection to recommendations of the Monitor pursuant to the Court's Order Requiring Response and in light of the Court's stated intention to hold hearing on the matter as described in the Appointment Order. See Order Requiring Resp. **[DE 115]**; see also  Appointment Order ¶ 37 **[DE 77]**.

      The Monitor's Initial Report (the "Initial Report") makes two primary requests which this Court has required the parties to address:  1) whether this Court should permit the Monitor to pursue and/or stay litigation in the Northern District of Illinois action on behalf of Hunter Wise Commodities;[1] and 2) whether this Court should convert the Monitorship into a full receivership in order to "liquidate all remaining assets of the Entity Defendants, recover assets from the Individual Defendants as well as third-party transferees, and effectuate a comprehensive claims process that would allow for distribution to creditors and investors. . . ." Special Monitor and Corporate Manager's Initial Report 2 **[DE 102]** [hereinafter "Initial Report"]; see also Order Requiring Resp. **[DE 115]**.  A judicial grant of such power at this preliminary stage of the litigation,

---

    1.  The Northern District of Illinois case is a declaratory judgment proceeding initiated on September 25, 2012, bearing a case number 1:12-cv-07656.

involving a question of first impression (as this Court has acknowledged[2]), testing the statutory authority granted by a legislative enactment in its infancy would be wholly improper.

## Argument

This Opposition to Recommendations in Monitor's Initial Report is divided into two parts. Part I will address the impropriety of permitting the Monitor to pursue or issue a stay of the Northern District case. Part II will address the impropriety of converting the Monitorship into a full receivership.

I. <u>The Court Should Not Attempt to Stay the Declaratory Proceeding in the United States Court for the Northern District of Illinois</u>

   A. *This Court Lacks Authority to Bind a District Court of the Seventh Circuit*

The Northern District of Illinois need not honor a stay ordered by this Court because district court judges in Florida do not make law that is binding on district court judges in Illinois. Parties litigating in the Northern District of Illinois and in fact, in all the districts and panels of the Seventh Circuit Court of Appeals are entitled to the independent judgment of the judges of the Seventh Circuit.  <u>Colby v. J.C. Penny Company, Inc.</u>, 811 F.2d 1119, 1123 (7th Cir. 1987) (Posner, J.). Each Seventh Circuit judge must develop her own rational analysis keeping in mind the objective benefit of having reasonable uniformity of federal law. <u>Id</u>. Meaning, respect must be given the decisions of other circuits but the proper case considerations are to be that of the litigating court. <u>Id</u>. One must be particularly attentive to avoiding different outcomes when a single litigant's acts are challenged for the same practice in different jurisdictions and where the defendant may be engineered into inconsistent obligations. <u>Id</u>. At 1124. Yet, even in circumstances where a defendant could be put into different outcomes "district judges in [the Seventh] circuit must not treat

---

   2.  "The enactment of recent amendments to the Act [the Commodity Exchange Act], namely the amendments by the Dodd-Frank Act, expanded the CFTC'S jurisdiction under the Act, and presents the Court with a matter of first impression relating to the scope of this expanded jurisdiction." Order on Pl.'s Mot. for Prelim. Inj. 2 **[DE 79]**.

decisions *by other district judges*, in this and *a fortiori* in other circuits, as controlling, unless the doctrine of res judicata or of collateral estoppel applies." Colby, 811 F.2d at 1124. (italics in original text).

Colby was an employment litigation concerning a woman's right to equal treatment in the providing of health insurance opportunities. Ms. Colby's suit though was held in abeyance while a parallel suit (in the Sixth Circuit) challenging the same practice on a national basis was litigated. When the Sixth Circuit district court decision was rendered in favor of the defendant Penny Company, Inc. (but was yet on appeal to the Sixth Circuit) the Seventh Circuit district judge entered judgment against Ms. Colby on the basis of *stare decisis*. The Seventh Circuit Court of Appeals found error in this reasoning applied by its district court. The Seventh Circuit Court of Appeals held that it was improper for the district court to dismiss Colby, a Seventh Circuit case, because a similar case in the Sixth Circuit had been dismissed.[3]

Similarly, a stay order of this Court has no binding authority on the Seventh Circuit district court and should not be issued. As Justice Posner explained, judges in the Seventh Circuit may not treat a

---

3. The concept as stated by Circuit Judge Posner follows:

Where different outcomes would place the defendant under inconsistent legal duties, the case for the second court's not going into conflict with the first is particularly strong. A conflict would place the defendant in an impossible position unless the Supreme Court agreed to hear the case, which it might be reluctant to do if the conflicting decisions, however excruciating for the defendant, raised no issue of general significance-yet might feel obliged to do anyway. See, e.g., GTE Sylvania, Inc. v. Consumers Union of the United States, Inc., 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). The second condition for greater deference-different outcomes would place the defendant under inconsistent obligations-is missing in this case, however. And even in that situation, district judges in this circuit must not treat decisions *by other district judges,* in this and *a fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits. The reasons we gave for giving some though not controlling weight to decisions of other federal courts of appeals do not apply to decisions of other district courts, because the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges and because the Supreme Court does not assume the burden of resolving conflicts between district judges whether in the same or different circuits. Federal district judges in Detroit do not make law that is binding on federal district judges in Chicago.

Colby, 811 F.2d at 1124.

decision from a district judge in the Eleventh Circuit as controlling and a stay order of this Court will be given no more weight than that of a persuasive request.

B.  *The Northern District of Illinois Case Was First Filed and Should Not be Disturbed by this Court*

A stay shall not be issued because the Northern District of Illinois case was first filed and under Eleventh Circuit precedent, as the first filed, the Northern District case should not be disturbed by this Court.  In Milwaukee Gas Specialty Co., v. Mervcoid, 104 F.2d 589 (7th Cir. 1939), Mervcoid first sued Milwaukee in a declaratory judgment claim for resolution of Milwaukee's claim of patent infringement by Mervcoid on certain Milwaukee patents.  Milwaukee in a later suit sought to enjoin plaintiff Mervcoid from prosecuting its earlier claim in the declaratory action.  The court ruled that "[i]t is of no moment, in the determination of the character of the relief sought, that the suit is brought by the alleged infringer instead of by the owner." Id. at 592.  The court then explained, "[t]he general rule is that the court first acquiring jurisdiction is entitled to maintain it until its duty is fully performed." (citations omitted)  Id.  Other courts have authorized one federal district court to enjoin another but the court that can issue the injunction though is the court that first obtained jurisdiction.  Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3rd Cir. 1941); see also Steelman v. All Continental Corp., 301 U.S. 278 (1937).

Eleventh Circuit precedent requires that the first court to obtain jurisdiction of an issue shall not be disturbed notwithstanding which court has rem related to the subject parties. See Empire Trust Co., et al., v. Books, 232 F. 641 (1916).[4]  In Empire Trust, the appellate court explained that:

> [W]here the issues in the subsequent suit are different from those involved in the first suit, and the subject-matter is not identical, there can be no infringement of the jurisdiction of the court in which the first suit is pending, by reason of the institution of the second suit in a court of concurrent jurisdiction. The only identity between the two suits in that event is that they relate to the same property, and, this being true, there is no apparent reason why the court which first acquires possession of the property should surrender its possession

---

4.   The law of the Fifth Circuit Court of Appeals prior to September 30, 1981 is binding precedent in the Eleventh Circuit Court of Appeals. Bonner v. City of Prichard, Alabama, et al, 661 F.2d 1206 (1981).

and thereby defeat its own jurisdiction, a jurisdiction which does not infringe upon the prior jurisdiction of the court in which the first suit was brought.

Id. at 645.

Furthermore, the appellate court held that "[w]here the purpose of both suits is the same, and the relief prayed for substantially identical, the prior jurisdiction of the first court should be respected." Id. at 646; see also Castanho v. Jackson Marine Corp., 650 F.2d 546, 549 (5th Cir. June 25, 1981) (finding that the court having the initial proceeding may, at its discretion enjoin the parties from bringing ancillary proceedings).

Here, a stay should not be issued because the Northern District of Illinois case was first filed and under Eleventh Circuit precedent, as the first filed, the Northern District case should not be disturbed.

II. The Court Should Not Convert the Monitorship into A Full Receivership

The Defendants Martin and Jager object to the appointment of a receiver and conversion of the Monitorship into a full receivership, bestowed with the powers requested, because:

1) the grant of such powers directly contradicts the purpose of a receivership;

2) the CFTC cannot overcome its burden to establish the need for the extraordinary remedy of appointing a receiver; and

3) the CFTC Complaint fails to state a cause of action which is necessary before this Court may authorize a receiver.

A. *The Grant of Power Requested by the Monitor Directly Contradicts the Purpose of a Receivership*

A receiver is an officer of the court making the appointment. Stuart v. Boulware, 133 U.S. 78, 81 (1890). The property in a receiver's hands is not, in a legal sense, in its possession but is in the possession of the court that appointed the receiver as its officer. Thompson v. Phenix Ins. Co., 136 U.S. 287, 297 (1890); Fosdick v. Schall, 99 U.S. 235, 251 (1878). The United States courts have the power to appoint a receiver to preserve the property pending determination of the case on its merits. Burnrite Coal Briquette

J.B. GROSSMAN P.A.
200 East Las Olas Boulevard · Suite 1660 · Fort Lauderdale · FL · 33301 · Tel 954.452.1118

Co. v. Riggs, 274 U.S. 208 (1927) (emphasis added).  The court, in its discretion, may appoint a receiver to "preserve and protect the property pending final disposition." Gordon v. Washington, 295 U.S. 30, 37 (1935).   A receiver should not be used to "oust any party of his right to the possession of the property but merely to retain it for the benefit of the party who may ultimately appear to be entitled thereto." Wiswall v. Sampson, 55 U.S. 52, 58 (1852); Colorado Wool Mktg. Ass'n v. Monaghan, 66 F.2d 313, 315 (10th Cir. 1933) (finding that the first duty of a court having possession of property is to preserve it for the litigants); see also Los Angeles Trust Deed & Mortgage Exch. v. Sec. & Exch. Comm'n, 285 F.2d 162 (9th Cir. 1960) (explaining that a district court has the power to appoint a receiver to maintain the status quo of the defendant's assets and those of third parties held by defendant).

Here, in the Initial Report the Monitor acknowledged that her mandate from the Court was to "examine the Entity Defendant's finances and options, and make a recommendation about the alternatives to maximize the operations and asset value of the Entity Defendants for the benefit of creditors, investors (mostly end customers), and non-complicit member owners of the Entity Defendants." Initial Report 3 **[DE 102]** (emphasis added); see also Appointment Order 2 **[DE 77]**.  Furthermore, the Court explained and the Monitor acknowledged the Court's "desire to preserve the Entity Defendants' assets. . . ." Initial Report 3 **[DE 102]** (emphasis added); see also Appointment Order 2 **[DE 77]**.   The Monitor, however, after recognizing her obligations, and the desire of the Court to preserve assets, went on to recommend liquidation of all assets and enjoinment of all aspects of the business not currently enjoined.  As the court in Riggs explained, this Court, as a court of the United States, has the power to appoint a receiver but the receiver's powers should include only those powers necessary to preserve the property pending determination of this case on its merits.  Like the court in Monaghan, this Court should recognize its duty to preserve the property for the litigants pending a final determination.  Providing the Monitor with the power to liquidate all assets of the estate and discontinue business endeavors that have secured valuable

contractual rights to provide (*i.e.,* sell metals to) the United States Mint with precious metals runs afoul of not only her obligations as Monitor but makes the goal of preservation, as described by the United States Supreme Court, an impossibility.

The Monitor's request must be denied because rather than maintain the status quo the requested powers create a new state of affairs. At this temporary stage no liability has been assessed against the Defendants; yet, the conversion of the Monitorship into a full receivership, with full powers of liquidation and wind-up, before a final trial on the merits would condone a total ouster of the Defendants (and end customers) right to the possession of estate property.

B. *The CFTC Cannot Overcome its Burden to Establish the Need for the Extraordinary Remedy of Appointing a Receiver*

The appointment of a receiver is not automatic but requires an "adequate showing" by the plaintiff. Citibank, N.A. v. Nyland, 839 F.2d 93 (2d Cir.1988). A party seeking the appointment of a receiver must overcome a heavy burden. Wickes v. Belgian Am. Educational Foundation, Inc., 266 F.Supp. 38, 40 (S.D.N.Y.1967). When a receiver is sought pursuant to Federal Rule of Civil Procedure 66 ("Rule 66"), "the appointment . . . is not a substantive right but is a remedy that is ancillary to the primary relief prayed for in the suit." Wright, Miller, Kane & Marcus, Federal Practice and Procedure § 2983. The discretionary power of appointing a receiver should be exercised with caution in view of all the facts and circumstances of the particular case. See Sage v. Memphis & L.R. Co., 125 U.S. 361, 376 (1888); see also Union Planters Nat. Bank v. East Cent. Arkansas Economic Development Corp., 13 S.W.3d 578 (2000); Ohio Bur. of Workers' Comp. v. Am. Professional Emp., Inc., 920 N.E.2d 148 (2009); King County Dept. of Community and Human Services v. Northwest Defenders Ass'n, 75 P.3d 583 (2003). In conducting its review the court should consider the totality of the circumstances. Premier Farm Credit, PCA v. W-Cattle, LLC, 155 P.3d 504 (Colo. App. 2006).

A court considering the propriety of appointing a receiver under Rule 66 should make not only the formal findings necessary for the appointment of a receiver under Rule 66, but also the factual and legal findings required under Federal Rule of Civil Procedure 65 ("Rule 65"). <u>There's a New Sheriff in Town: Receiverships and Other Alternatives to Bankruptcy</u>, § IV 012209 ABI-CLE 443. [hereinafter "Receiverships and Other Alternatives to Bankruptcy"]; <u>see, e.g.</u>, <u>Savageau v. J. & R. A. Savageau, Inc.</u>, 285 P.2d 810 (1955). Rule 65 should be used in conjunction with Rule 66 because, similar to an injunctive proceeding, the appointment of a receiver is a drastic remedy only to be issued in extraordinary circumstances. The following factors should be considered by the courts when considering the appointment of a receiver:

(1) a reasonable probability of success on the merits;

(2) a danger of immediate and irreparable injury;

(3) that there is no adequate remedy at law;

(4) that the public interest favors granting the relief;

(5) that the balance of equities favors the relief sought;

(6) that the remedy will preserve the status quo; and

(7) that there is imminent danger of the property being lost, concealed, injured, diminished in value, or squandered.

Receiverships and Other Alternatives to Bankruptcy at § IV; <u>Varsames v. Palazzolo</u>, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000). "If the appointment of a receiver can withstand the scrutiny of Rule 65 in addition to the procedural requirements of Rule 66, it is more likely to be the most suitable remedy under the circumstances." <u>Id</u>.

Here, the CFTC has failed to overcome its heavy burden because it has failed to establish the necessity of appointing a receiver under the current circumstances. First, the CFTC has not established a likelihood of success on the merits. In fact, this Court has merely recognized that the CFTC "has met its

burden to present a prima facie case of violations of the Commodities [sic] Exchange Act." Order on Pl.'s Mot. for Prelim. Inj. 23–24 **[DE 79]** [hereinafter "Injunctive Order"]. While the Commodity and Exchange Act (the "CEA") generally provides for injunctive relief, 7 U.S.C. § 13a-1 (Section 6c of the CEA), nothing in the CEA provides for the appointment of a receiver pending a trial on the merits. It is the statutory grant of authority, under the CEA, and the courts' interpretation of the CEA that lowers the CFTC's burden during the preliminary injunctive stage from a substantial likelihood of success on the merits down to establishing a prima facie case of violations. See Injunctive Order 20–21 **[DE 79]**; see, e.g., CFTC v. Hunt, 591 F. 2d 1211, 1220 (7th Cir. 1979). The courts' rational for lowering this standard is founded on protecting the interest of the public in light of exigent circumstances. The courts have reasoned that exigent circumstances exist because the alleged wrongdoer has, or is currently, violating the CEA and future violation is likely unless the courts take the extraordinary measure of preliminarily enjoining the alleged wrongdoer. Here, the Defendants have been enjoined, they have no opportunity to control the Entity Defendants, and their personal assets have been frozen; therefore, it is impossible for the Defendants to violate the CEA, to the detriment of the public, and the rational for lowering the standard of review is abrogated. Thus, the prima facie standard, recognized by the Court in granting the preliminary injunction, is now insufficient to authorize the appointment of a receiver.

Second, the CFTC cannot establish a danger of immediate and irreparable injury. The injury that warranted issuance of the preliminary injunction in this matter found its genesis in aggregate monetary losses suffered by end customers through their investments in precious metals. Thus, to succeed on this factor the CFTC would have to describe a reasonable scenario where the Defendants would now be able to engage customers in the transactions outlined in the Complaint, or negatively impact those funds held by the Monitorship, or somehow interfere with the Monitor or the CFTC in their endeavor to further investigate the Defendants, or obstruct the return of funds to those who may be entitled. The Defendants have been

enjoined, have no opportunity to control the Entity Defendants, no opportunity to aid any other business that may have the means to engage in the transactions described in the Complaint, and the Defendants cooperation to this point has not indicated anything short of their awareness and complete respect for the gravity of the matter they find themselves a party and their willingness to provide guidance and support as the Monitor or the CFTC request.  Furthermore, all monies are frozen, personal and business, thereby, the Defendants have no access to or any ability to fund any pursuit complained of by the CFTC.

Third, the CFTC cannot establish that the appointment of a receiver will preserve the status quo because providing the Monitor with the power to liquidate all assets of the estate and discontinue business endeavors will result in a total ouster of the Defendants (and end customers) right to the possession of estate property – creating a new state of affairs.  Fourth, the CFTC cannot establish that there is imminent danger of the property being lost, concealed, injured, diminished in value, or squandered.  As described above, all assets are under the control of the Court and the Defendants do not have the ability to access their own personal funds or assets.

C. The CFTC Complaint Fails to State a Cause of Action Which is Necessary Before this Court may Authorize a Receiver

"Unless authorized by statute, there is no such thing as an action brought distinctively for the mere appointment of a receiver; to justify the appointment it is essential that some proper final relief in equity be asked for in the bill which will justify the court in proceeding with the case." 4 Pomeroy's Equity Jurisprudence, 4th Ed., p. 3613, § 1539; Sweesy v. J.M. Potter Oil Co., 38 Ohio App. 206, 209 (1931).  Furthermore, "[i]t is fundamental that a receivership cannot be the primary object of litigation." Gordon v. Washington, 295 U.S. 30, 37 (1935).  "It is not an end in itself." Gordon, 295 U.S. at 37 (1935).  Absent a cause of action in the main case, there is no main case pending, and the court is without power or jurisdiction to appoint a receiver. Laumeier v. Sun–Ray Products Co., 50 S.W.2d 640, 643;  see also State ex rel. Kopke v. Mulloy, 43 S.W.2d 806; see, e.g., Price v. Bankers' Trust Co., 178 S.W. 745.  Ultimately, if

J.B. GROSSMAN P.A.
200 East Las Olas Boulevard · Suite 1660 · Fort Lauderdale · FL · 33301 · Tel 954.452.1118

the petition for receivership fails to state a cause of action then the judgment appointing the receiver is absolutely void. United Cemeteries Co. v. Strother, 119 S.W.2d 762, 765 (1938).

Here, the CFTC has failed to state a claim in the underlying cause of action because it has failed to establish jurisdiction via the Dodd-Frank Act and, therefore, the Court lacks equity jurisdiction to appoint a receiver.[5] The CFTC's statement of jurisdiction, via the Dodd-Frank Act, is their only claim of jurisdiction over the Defendants.[6] Compl. ¶ 8 **[DE 1]**. As the court in Laumeier recognized, where the underlying cause of action fails to state a claim there is no jurisdiction and the court has no power to appoint a receiver. Like the court in Laumeier, this Court has no power to appoint the receiver because the underlying claim relies on the jurisdiction Dodd-Frank may grant, and the failure to establish jurisdiction, under Dodd-Frank forecloses this Court's ability to issue the request to appoint a receiver with the requested powers.

## Conclusion

This Court should not appoint a receiver, bestowed with the powers requested by the Monitor, because:

1) liquidation of assets is directly contrary to the purpose of a receivership at this stage, the CFTC cannot overcome the heavy burden it must to authorize the appointment of a receiver, and the CFTC's failure to state a cause of action forecloses the equity jurisdiction of the Court necessary to appointment a receiver; and

---

[5]. The failure of the CFTC to establish jurisdiction under the Dodd-Frank Act has been fully briefed in this Court in the Defendants' Motion to Dismiss and is incorporated herein. See Defs.' Mot. to Dismiss **[DE 33]**.

[6]. The actual claim of jurisdiction made by the CFTC states the following: "The Commission has jurisdiction over the conduct and transactions at issue in this case pursuant to Section 2(c)(2)(D) of the Act, as amended by the Dodd-Frank Act, 7 U.S.C. § 2(c)(2)(D)." Compl. ¶ 8 **[DE 1]**.

2) a stay order of the Northern District case from this Court would have no binding authority on the Seventh Circuit district court and, as the first filed case, under Eleventh Circuit binding authority this Court is prohibited from issuing a stay that would disturbed the Northern District case.

A judicial grant of such power at this preliminary stage, involving a question of first impression (as this Court has acknowledged), testing the statutory authority granted by a legislative enactment in its infancy would be wholly improper.

WHEREFORE, Defendants ask this Honorable Court to consider the foregoing information, the outstanding pleadings before the Court and, in accordance therewith, refrain from attempting to issue a stay of the Northern District of Illinois case and, additionally, to continue the Monitorship pursuant to the powers mandated by the Court under the Appointment Order and subsequent Injunctive Order with the limited additional power to disburse funds to the end customers and order that such be done.

Respectfully Submitted,

*/s/ Jay Bruce Grossman*
Jay Bruce Grossman (FL Bar #: 0147036)
JBG@JBGrossmanpa.com
William L. Tucker (FL Bar #: 92580)
WLT@JBGrossmanpa.com
J.B. Grossman P.A.
200 East Las Olas Boulevard, Suite 1660
Fort Lauderdale, Florida 33301
Telephone: (954) 452-1118
Facsimile: (954) 916-4448

*Attorney for Defendants Harold Edward Martin, Jr. and Fred Jager*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/

Jay Bruce Grossman

J.B. GROSSMAN P.A.

200 East Las Olas Boulevard · Suite 1660 · Fort Lauderdale · FL · 33301 · Tel 954.452.1118

# SERVICE LIST
U.S. Commodity Futures Trading Commission v. Hunter Wise Commodities, LLC, et al.
Case No. 9:12-cv-81311-DMM
United States District Court, Southern District of Florida

| SERVICE VIA CM/ECF | SERVICE VIA CM/ECF |
|---|---|
| U.S. Commodity Futures Trading Commission<br>Three Lafayette Centre<br>525 West Monroe Street, Suite 1100<br>Chicago, IL  60661<br>Telephone  (312) 596-0700<br>Fax:  (312) 596-0714<br>Carlin Metzger (cmetzger@cftc.gov)<br>Joseph Konizeski (jkonizeski@cftc.gov)<br>Brigitte Weyls (bweyls@cftc.gov)<br>Thaddeus Glotfelty (tglotfelty@cftc.gov)<br>Rosemary Hollinger (rhollinger@cftc.gov)<br><br>U.S. CFTC<br>4900 Main Street, Suite 500<br>Kansas City, Missouri 64112<br>Telephone (816) 960-7700<br>Fax: (816) 960-7754<br>Peter Riggs (prigs@cftc.gov)<br>Jeff Le Riche (jleriche@cftc.gov)<br><br>*Attorneys for Plaintiff*<br><br><br>Richard B. Carey<br>Carey Law Group, P.A.<br>1711 Worthington Road<br>Suite 107<br>West Palm Beach, FL  33409<br>Telephone (561) 247-1266<br>Fax:  (561) 282-3401<br>Richard@rcareylaw.com<br><br>*Attorney for Defendant Baris Keser* | Jeffrey C. Pepin<br>Law offices of Paul J. Burkhart, PL<br>800 Village Square Crossing<br>Palm Beach Gardens, Florida 33410<br>Telephone  (561) 880-0155<br>Fax:  (561) 656-2070<br>jpepin@paulburkhart.net<br><br>*Attorney for Defendant John King*<br><br><br>James D. Sallah<br>Sallah & Cox, LLC<br>2101 NW Corporate Boulevard, Suite 218<br>Boca Raton, Florida  33486<br>Telephone  (561) 989-9080<br>Fax:  (561) 989-9020<br>jds@sallahcox.com<br>Joshua A. Katz, Esq.<br>jkatz@sallahcox.com<br><br>*Attorney for Defendants James Burbage, and Frank Gaudino*<br><br><br>Bradford M. Cohen<br>1132 SE 3rd Avenue<br>Fort Lauderdale, Florida  33316<br>Telephone  (954) 523-7774<br>Fax:  (954) 523-2656<br>lawronin@aol.com<br><br>*Attorney for Defendant David Moore* |

**J.B. G**ROSSMAN ‖P.A.‖

200 East Las Olas Boulevard · Suite 1660 · Fort Lauderdale · FL · 33301 · Tel 954.452.1118